Interim Decision #1321

MATTER OF OKAMOTO

In DEPORTATION Proceedings

A-12655384

*Decided by Board February 11, 1964*

Since substantial deviation from the authorized training conditions and program
established by petition (section 214(c)) on behalf of an industrial trainee
(section 101(a)(15)(H)(iii)) violates that status, he is deportable under
section 241(a)(9) of the Act.

CHARGES:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Nonimmi-
grant, failed to comply with conditions of status under which
admitted.
Lodged: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Nonimmi-
grant, failed to comply with conditions of nonimmigrant status to
which changed after entry.


The special inquiry officer held that the record sustains the lodged
charge that respondent failed to comply with the conditions of his
nonimmigrant status as changed after entry. Respondent appeals
from this determination of deportability.[1] We concur in the special
inquiry officer's conclusion.

Respondent is a native and national of Japan. He last entered this
country at Honolulu on September 19, 1960, as a visitor for pleasure.
Subsequently his nonimmigrant status was changed to that of an
industrial trainee.[2] Respondent was first trained by Auto Parts Ware-
house, which dealt in wholesale automotive parts. He requested a
change of trainer to the Summit Manufacturing Company (here-
after called Summit), whose business is wholly concerned with molded
rubber parts and sealing components for automatic transmissions.
The wife of the owner-president of Summit is respondent's mother's
sister.

Although Summit employs about two to four girls irregularly part

---

[1] The special inquiry officer granted respondent's application for voluntary
departure.
[2] Section 101(a)(15)(H)(iii).

456

time, respondent is the only full-time employee. Therefore, the record might support a conclusion that respondent was more of an ordinary employee than a trainee.[3] There are some indications the Service at the time of serving the order to show cause doubted that respondent was actually receiving training. The Service brought these proceedings, however, because investigation indicated respondent's activities at Summit did not conform with the approved petition.[4]

We are not concerned here with whether the respondent's actual activities at Summit would qualify him for trainee status if those activities and the petition were in harmony. We also are not concerned with whether petitioner's statements on, or in support of, the petition willfully misrepresented the training program. For purposes of this appeal we shall consider that Summit would qualify as a trainer and respondent would qualify as an industrial trainee if the petition accurately reflected the actual situation.

Two questions are raised. Does respondent's actual training deviate from the training proposed by the petition? If so, does the deviation constitute a violation of respondent's nonimmigrant status?

Summit's petition in behalf of respondent (Exh. 2) described summit as a manufacturer of molded rubber parts and sealing components for automatic transmissions. Summit's president's statement, incorporated by reference into the petition, described the training planned for respondent. That statement outlined the first part of the training program as follows:

1. Manufacture of rubber component parts.
    a. Familiarization with varying rubber formulas, temperature ranges, heat requirements and ranges; special features and requirements of various transmissions relating to rubber components and their application relating to same.
    b. Basic introduction and training in various production steps; mixing crude stock, milling, extruding finished formulas, operating heat press, curing, trimming.
    c. Care and maintenance of multi-cavity molds.

Summit's president also said special emphasis was to be placed on the manufacture of rubber sealing components, as well as the design and

---

[3] At oral argument counsel for the Service said that respondent, as the only employee, is quite obviously replacing a United States citizen laborer. (The petition form defines an industrial trainee as "One who seeks to enter at the invitation of an industrial organization, firm, or other trainer for the purpose of receiving instruction in any field of endeavor. Only incidental production necessary to the training is permitted provided a United States worker is not thereby displaced.") This point was not developed at the hearing, however. We do not give it any consideration in determining whether respondent is maintaining his status as an industrial trainee.

[4] 8 CFR 214.2(h).

assembly of various kits, assemblies and sub-assemblies required in the repair of automatic transmissions.

Respondent's attorney in forwarding the petition for filing wrote:

In order that the subject when he returns to Japan be experienced in the numerous phases of the highly specialized field involving automatic automobile transmissions he desires to obtain training in the branch of automatic transmission manufacturing dealing with molded rubber parts and sealing components. The Summit Manufacturing Company, Inc., manufactures such molded rubber parts and sealing components and is willing to extend its facilities for training the subject as indicated by the attached Form I-129B and the letter of the president, Mr. Jack Litke.[5]

From these representations, the Service could conclude only that respondent would engage in actual performance of the various manufacturing processes described in the president's statement. In fact Summit did not, and could not, offer respondent such training opportunities.

Respondent's counsel attempts in his brief to show that the word "manufacture" has various applications, some of which might cover—at least in part—what Summit does. The testimony of Summit's president, however, repels the argument that in the automatic transmission trade Summit, on the basis of its present activities, could be considered a manufacturer. The president testified that prior to the time he took over the business Summit did actually manufacture automatic transmission parts. He stopped that phase of the business, however, because it was losing money. Respondent's counsel also objects to the statement in the special inquiry officer's opinion that Summit makes nothing. As we have seen, Summit does add something to the products which it purchases, mainly increasing their salability through grouping and packaging. We may concede, therefore, that, although not a manufacturer, Summit makes something. Nevertheless, whatever Summit makes is certainly far removed from what the Service, with good reason, thought it made when the Service approved the petition.

As the trial attorney points out in the Government's reply brief, when the petition here was filed respondent was completing 18 months' training in another firm which distributed automotive parts. Indications that the new trainer would add training in manufacturing certain automotive parts to the training respondent had already acquired in distributing automotive parts may well have influenced

---

[5] Counsel prepared this statement on the basis of the information supplied by Summit's owner. Both counsel and Summit's president, in retrospect, admit that the petition does not accurately describe Summit or respondent's training.

the Service in granting the request for further training. In fact, as the record amply shows, Summit is also essentially a distributor.[6]

We need not determine, however, what motivated the Service's approval of the petition. An industrial trainee enjoys the status established by the petition.[7] Substantial deviations from the authorized training conditions and program may violate that status, even though the alien's activities, if properly described, might fall within the general classification, "industrial trainee." In administering sections 101(a)(15)(H)(iii) and 214(c) of the Act, the Service may, as it did here, investigate the alien's training program. It need not engage in a colloquy on strained semantics to determine what that program is—or should be.

We find that the training actually received by respondent varies substantially from the training proposed in the Petition to Classify Nonimmigrant as Temporary Worker or Trainee and that the variation constitutes a violation of respondent's nonimmigrant status. Permitting such divergencies would unduly hamper the Government in administering the Act. The lodged charge is sustained. We shall dismiss the appeal.

ORDER: It is ordered that the appeal be and is hereby dismissed.

---

[6] Summit's companion, O.E.M. Automatic Transmission Parts, performs the actual distribution. Summit is concerned with increasing marketability for the products distributed by O.E.M. through grouping, minor trimming, and packaging. O.E.M., however, sometimes adds other seals and rings to the kits prepared by Summit. (See testimony of Summit's president and exhs. C and D.) Summit's owner also owns O.E.M. and the two corporations occupy the same premises. Apparently training in Summit would practically merge with training in the distributing functions of O.E.M.

[7] Form I–171 (Rev. March 24, 1960). Notice of Approval of Visa Petition, contains a statement that approval of petitions to import nonimmigrant aliens covers only the employment or training specified in the petition and that acceptance of employment or training not specified in the petition is a violation of the beneficiary's nonimmigrant status.